UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

STUDIO SIX PRODUCTIONS, LTD.,                :
                                             :
                              Plaintiff,     :
                                             :          REPORT AND
            -against-                        :          RECOMMENDATION
                                             :
SRBUHI SARGSYAN,                             :          19-CV-2685 (WFK)(MMH)
                                             :
                              Defendant.     :

------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

     In this diversity action, Plaintiff Studio Six Productions, Ltd. ("Studio Six") sued

Defendant Srbuhi Sargsyan, alleging common law breach of contract and seeking injunctive

relief and monetary damages.  (*See generally* Compl., ECF No. 1.)[1]  Studio Six eventually

moved for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local

Civil Rule 55.2.  (*See generally* ECF Nos. 37 & 43.)  After evidentiary hearings, the Honorable

William F. Kuntz, II denied injunctive relief, reserved decision on any remaining relief, and

ordered Studio Six to submit proposed monetary damages.  Before the Court are Studio Six's

supplemental submissions seeking monetary damages (incorrectly filed as a "motion for

default judgment").  (ECF Nos. 57–58.)  Judge Kuntz referred the submissions for report and

recommendation regarding their reasonableness.  For reasons set forth below, the Court

respectfully recommends that Studio Six's requests should be **granted in part and denied in

part**.

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.

# I.  **BACKGROUND**

## A.  **Facts[2]**

Studio Six is a music production company based in Queens, New York.  (Compl., ECF No. 1 ¶ 7.)  Non-party Aram Abgarian is the owner and executive of Studio Six.  (*Id.* ¶ 9.)[3] Sargsyan is an Armenia-based singer who performs under the name "Srbuk."  (*Id.* ¶ 8.)

According to the Complaint, in 2013, Armenian music producer Ghazaros Yokourtjian "discovered" then-19-year-old Sargsyan in Armenia.  (*Id.* ¶¶ 10, 12–13.)  In early 2014, Yokourtjian sent recordings of Sargsyan to Studio Six and introduced Sargsyan to Abgarian by phone.  (*Id.* ¶ 12.)  By June 2014, Yokourtjian, Abgarian, and Sargsyan agreed that Studio Six would provide a recording contract and that Sargsyan would record for Studio Six, who would fund production, own the recordings, pay royalties, secure distribution with one of the major recording labels based in New York, LA, or Nashville, and launch Sargsyan's international singing career.  (*Id.* ¶ 14.)  As alleged, throughout 2014, Studio Six explained the U.S. music industry practices to Sargsyan (who remained in Armenia) and shared the company's vision for her career.  (*Id.* ¶ 15.)

In December 2014, Abgarian emailed English and Armenian versions of an Exclusive Recording Agreement (the "Contract") to Sargsyan to memorialize the terms of their contractual relationship and informed her that an attorney could review the Contract for her.

---

[2] The facts are taken from the Complaint, whose well-pleaded allegations are assumed to be true; documents incorporated by reference into the Complaint; and the uncontroverted documentary evidence submitted in support of Studio Six's second default motion.  *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

[3] The Complaint refers to the actions of "Plaintiff," but the evidentiary record reflects that Abgarian interacted with Sargsyan and others on Studio Six's behalf. (*See, e.g.*, Jan. 20, 2023 Hr'g Tr. 14–40 (Abgarian testimony).)

(*Id.* ¶¶ 16–17.)  Under the Contract, in exchange for the above-described services from Studio Six, Sargsyan agreed to give exclusive, unlimited rights to Studio Six to own and distribute all master recordings, records, and performances throughout the world, and agreed to not enter into recording contracts with any other company.  (*See* Contract, ECF No. 49-3 ¶¶ 7 & 9(b).) Sargsyan signed the Contract on February 28, 2015 in Armenia.  (Compl., ECF No. 1 ¶¶ 17, 19.)  Days later, Abgarian counter-signed the Contract for Studio Six in New York using the same pen as Sargsyan, and later confirmed the Contract in a telephone conversation with her. (*Id.* ¶¶ 20–21.)

In the Complaint, Studio Six claims that it performed as promised under the terms of the Contract, including selecting the song *Yete Karogh Es* for Sargsyan to record; engaging "photographers, publicists, marketing companies, video directors, choreographers, stylists, and others"; conceiving a "cutting-edge marketing plan" for her; and producing a website, photography, and a music video for *Yete Karogh Es*.  (*Id.* ¶¶ 22–26.)  Studio Six alleges that *Yete Karogh Es*, released in October 2016, was the "most popular song in Armenia," and led to Sargsyan's appearance on talk shows and a guest performance on an Armenian reality TV show.  (*Id.* ¶ 27.)  According to the Complaint, approximately 18 months after signing, Sargsyan was a "*bona fide* celebrity in Armenia[,]" and the first phase of Studio Six's plan for her career was "a smash success."  (*Id.* ¶ 28.)

The Complaint further alleges that in approximately February 2017, Sargsyan became "uncooperative," "objected to or discounted [Studio Six's] 'Phase 2' plans" for her career, "withdrew her services," and stopped communicating with Abgarian.  (*Id.* ¶ 29.)  In October 2017, Sargsyan allegedly repudiated the Contract in a conversation with Yokourtjian.  (*Id.* ¶ 30.)  According to Studio Six, Sargsyan further breached the contract as follows: (1) in

March 2018, she appeared on "The Voice – Ukraine" without Studio Six's authorization or involvement; (2) she recorded three new songs for another music production company in 2018; and (3) in May 2019, she competed on the "Eurovision" contest and participated in related promotional videos without Studio Six's consent.  (*Id.* ¶¶ 31, 34–35.)

In April 2019, Studio Six sent a cease-and-desist letter to, *inter alia*, Sargsyan and the Armenian production company it believed was backing her, seeking a license for Sargsyan's television appearances.  (*Id.* ¶¶ 37–38.)  Counsel for the production company rejected any license offer and included Sargsyan on the email.  Sargsyan later contacted Yokourtjian and acknowledged that she received the email.  (*Id.*)

**B.    Procedural History**

On May 7, 2019, Studio Six filed this action against Sargsyan, seeking equitable relief and monetary damages, and simultaneously requested a preliminary injunction and temporary restraining order.  (*See* ECF Nos. 1, 5–6.)  Specifically, Studio Six seeks to enjoin Sargsyan from further breach of contract and for her to surrender "all intellectual property, social media accounts featuring [her] image in connection with the sale, promotion, or display of recordings, music streaming accounts, and on-line video sharing services."  (Compl., ECF No. 1 at 19 ¶ 4.)  Studio Six also requests the commissions due and owed on "all earnings [Sargsyan] received since January 1, 2018" pursuant to the Contract, and approximately $30,000 in costs for services rendered to produce *Yete Karogh Es*.  (*See id.* ¶¶ 75–76 & *id.* at 19 ¶ 3.)

The Court scheduled a show cause hearing for May 23, 2019.  (May 8, 2019 Order, ECF No. 7.)  By letter dated May 17, 2019, Sargsyan, proceeding *pro se*, informed the Court that she was based in Armenia and could not attend the hearing in-person because her visa application had been rejected.  (Def. Ltr., ECF No. 10.)  The Court held the hearing on May

23, 2019, with only Studio Six's counsel present, but adjourned it to July 22, 2019, without receiving evidence, so that Sargsyan could obtain a visa and travel to the United States. (May 23, 2019 Min. Entry.) By letter dated July 18, 2019, Sargsyan stated that she could not attend the rescheduled hearing due to financial concerns. (Def. Ltr., ECF No. 20.) The Court again adjourned the hearing to September 23, 2019. (July 23, 2019 Min. Entry.) After several adjournments due to scheduling conflicts, the hearing was rescheduled to August 17, 2021. (Sept. 23, 2020 Order.) At Studio Six's request, the Clerk of Court entered a certificate of default in March 2021. (ECF No. 36.)

Studio Six filed its first motion for default judgment on March 19, 2021. (Mot., ECF No. 37.) In May 2021, upon Studio Six's motion, the Court denied the first motion for default judgment without prejudice to permit amendment. (May 13, 2021 Order, ECF No. 42.) Studio Six subsequently filed its second motion for default judgment on May 21, 2021. (2d Mot., ECF No. 43.) The Court then adjourned the hearing to January 20, 2022 to address the request for preliminary injunction and for default judgment. (July 30, 2021 Order, ECF No. 44 & Dec. 17, 2021 Order, ECF No. 50.) After Studio Six advised the Court regarding its witnesses' health concerns, the Court rescheduled the hearing further. (Jan. 18, 2022 Order & Oct. 13, 2022 Scheduling Order, ECF No. 52.)

The Court convened the hearing on January 20, 2023; Studio Six's counsel appeared with Abgarian but Sargsyan was not present. (Jan. 20, 2023 Min. Entry.) Abgarian testified regarding his interactions with Sargsyan before and after she signed the Contract, while expert witness Peter Lubin testified about his knowledge and experience working in the recording industry and in negotiating recording contracts with artists. (Jan. 20, 2023 Hr'g Tr. 6:16–13:18 & 13:25–49:13.) At the conclusion of the hearing, the Court reserved decision. (*Id.* 49:17–

18.)  In July 2023, Studio Six requested a follow-up conference.  (Pl. Ltr., ECF No. 54.)  At a status conference on August 4, 2023, the Court indicated its intent to deny injunctive relief and to consider monetary damages.  (Aug. 4, 2023 Min. Entry.)  The Court directed Studio Six to submit proposed compensatory damages and details to support the request.  (Aug. 4, 2023 Hr'g Tr., 9:14–15, 10:12–17, 11:17–25.)

Studio Six subsequently filed a one-page letter attaching a "Financial Breakdown" of its services, a summary of attorney billing records, and a proposed order.  (ECF Nos. 57 & 58.) Judge Kuntz referred the proposed order for a report and recommendation on the reasonableness of the proposed award.  (Sept. 29, 2023 Order Referring Mot., ECF No. 59.) Despite the length of the litigation, Studio Six has submitted no other evidence to support the requested damages.[4]

## II.    DISCUSSION

### A.    Legal Standards

Rule 55 of the Federal Rules of Civil Procedure employs a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc*., No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter a default.  Fed. R. Civ. P. 55(a).  If a claim is for "a sum certain or a sum that can be made certain by computation," the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2);

---

[4] Instead, Studio Six advised the Court regarding Sargsyan's performances.  (*See* ECF No. 60.)

*Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To "enter or effectuate judgment" the Court is empowered to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up).  Rather, the Court has "a separate obligation to assess whether damages are appropriate and, if so, to calculate the correct amount of damages." *Ningbo Yang Voyage Textiles Co. v. Sault Trading*, No. 18-CV-1961 (ARR)(ST), 2019 WL 5399973, at *6 (E.D.N.Y. Sept. 10, 2019), *adopted by* 2019 WL 5394568 (E.D.N.Y. Oct. 22, 2019).  Courts must determine "damages with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "To evaluate the proposed damages, the court 'may rely on detailed affidavits or documentary evidence'" without a hearing. *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp., Inc.*, No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).  If a plaintiff "has not submitted admissible evidence to properly support its claim for damages, and has therefore not met its burden of showing damages to a reasonable certainty," then the Court may deny the damages request, despite finding liability on the underlying claim. *See Ningbo*, 2019 WL 5399973, at *6.

Studio Six seeks monetary damages, post-judgment interest, attorneys' fees, and costs. (Pl. Ltr., ECF No. 57 at 1; Proposed Order, ECF No. 58 at 2.)

**B.      Analysis[5]**

**1.      Compensatory Damages**

Studio Six seeks an award of $538,350 in damages, based on the Contract's enforcement provisions. (*Id.*)

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position [it] would have occupied had the breaching party performed the contract." *LG Cap. Funding, LLC v. Solar Energy Initiatives, Inc.*, No. 19-CV-907 (NG)(RML), 2019 WL 7630792, at *3 (E.D.N.Y. Nov. 1, 2019) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)), *adopted by* 2020 WL 364078 (E.D.N.Y. Jan. 22, 2020). Generally, "in a breach of contract case, damages are calculated at the time of the breach." *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 384 (2d Cir. 2006). However, if the timing of breach is unclear, New York law also provides for restitution damages as an equitable remedy for repudiation or total breach of contract. *Living the Dream Films, Inc. v. Aloris Ent., LLC*, No. 20-CV-6982 (LGS)(JLC), 2021 WL 4342700, at *10 (S.D.N.Y. Sept. 24, 2021), *adopted by*, 2021 WL 5822233 (S.D.N.Y. Dec. 7, 2021). For restitution damages,

---

[5] The analysis assumes that Sargsyan is liable for breach of contract, a finding that remains *sub judice*. The parties agreed that any dispute related to the Contract would be governed by New York law. (Contract, ECF No. 49-3 at 19 ¶ 22(d).) "To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)). Drawing all reasonable inferences in Studio Six's favor, the Complaint's well-pleaded allegations appear to establish Sargsyan's liability for breach of contract.

"[u]pon a demonstration that a defendant is liable for material breach, the plaintiff may recover 'the reasonable value of services rendered, goods delivered, or property conveyed less the reasonable value of any counter-performance received by him.'" *Id.* (citing *Bausch & Lomb v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992)).

Here, the Contract provides that "in the event of a breach by [Sargsyan] of any material term, condition, representation, warranty or covenant contained herein," Studio Six "shall be entitled to the remedies of injunction and other equitable relief to prevent or remedy a breach of this Agreement," in addition to "any other rights or remedies, for damages or otherwise, which [Studio Six] may have." (Contract, ECF No. 49-3 at 14 ¶ 13.) Further, Sargsyan promises to "indemnify and save" Studio Six from "any and all liability, loss, damage, cost or expense . . . arising out of or connected with any breach or alleged breach of this Agreement[.]" (*Id.* at 10 ¶ 9(i).) Finally, "if [Sargsyan] enters into an agreement with a third party involving any entertainment industry activity that would normally fall outside of the scope of the [Contract] . . . , [Sargsyan] shall pay . . . to [Studio Six] twenty percent (20%) of 'Ancillary Net Receipts' in connection with any such Ancillary Rights Agreement[.]" (*Id.* at 18–19 ¶ 21(a).)

Notwithstanding these provisions, Studio Six has not met its burden to substantiate its requested damages of $538,350 to a reasonable certainty. The only documentation that Studio Six submits is a one-page letter from its counsel attaching a "Financial Breakdown." (*See* Pl. Ltr. Ex. A ("Fin. Breakdown"), ECF No. 57 at 2–4.) As a threshold matter, a letter from counsel attaching an exhibit that fails to identify the source of claimed damages does not qualify as admissible evidence. *See Pelgrift v. 355 W. 41st Tavern, Inc.*, No. 14-CV-8934 (AJN), 2018 WL 4735705, at *5 (S.D.N.Y. Sept. 30, 2018) (finding plaintiff's damages

spreadsheets that "do not explain the source of the information contained in those exhibits" to be inadmissible evidence).

More problematically, Studio Six's submission does not show "a detailed calculation, clearly setting forth the specific amounts that are sought with supporting detail," for three reasons. *Ningbo*, 2019 WL 5399973, at *6. *First*, Studio Six's estimates of lost profits are entirely speculative. "In an action for breach of contract, a plaintiff is entitled to recover lost profits only if he can establish both the existence and amount of such damages with reasonable certainty." *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000). "Although lost profits need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." *Id.* (cleaned up). Instead, Studio Six offers "[p]rojections of future profits based upon a multitude of assumptions that require speculation and conjecture and few known factors, which do not provide the requisite certainty." *Id.* (cleaned up). For example, Studio Six seeks $100,000 in commissions due and owed, calculated as "20% of a modest estimate that [Sargsyan] collected $500,000 from touring, merch sales, and endorsements between 2018 and the present date, and accounting for inactivity during and shortly after the 2020 pandemic." (Fin. Breakdown, ECF No. 57 at 4 (citing Contract, ECF No. 49-3 at 18 ¶ 21(a)).) Yet Studio Six does not provide any basis for its "modest estimate" that Sargsyan has earned half of one million U.S. dollars during her short career in Europe. As another example, Studio Six seeks a "COMPROMISE" fee of $150,000 "representing nominal buyout of [its] expected return on investment deprived due to Sargsyan's breach of contract" (*id.* at 4), but offers no facts to support its "expected return" or a finding that $150,000 is only a "nominal" fraction of that return. Given the lack of evidence about how Studio Six calculated these lost profit estimates, the Court cannot determine these

10

damages with reasonable certainty.  *See, e.g.*, *Living the Dream Films*, 2021 WL 4342700, \*10 (holding plaintiff's reliance on one distribution report to calculate total lost profits to be "entirely speculative" and "an insufficient basis" of calculating profits that plaintiff would have received from its investment); *Jacobs v. del la Maza*, No. 20-CV-3320 (ARR)(TAM), 2023 WL 5680180, at \*11 (E.D.N.Y. Aug. 18, 2023), *adopted by* 2023 WL 5806221 (E.D.N.Y. Sept. 7, 2023) (declining to speculate as to total lost profits because it is "a step too far given New York's heightened scrutiny for new businesses and the need for lost profits to be 'reasonably certain.'") (quoting *Biotronik A.G. v. Conor Medsystems Ir., Ltd.*, 22 N.Y.3d 799, 805 (2014)).

*Second*, Studio Six does not provide receipts or other corroborating evidence of identified expenditures.  For example, Studio Six seeks $9,000 in translation fees and two visa applications for Sargsyan, which are presumably easily verifiable expenditures, but Studio Six does not include any documentation in its supplemental submission or anywhere in the record. (Fin. Breakdown, ECF No. 57 at 2.)   As another example, Studio Six seeks $4,100 as reimbursement for equipment provided to Sargsyan to facilitate remote work, including a laptop ($1,500), headphones ($200), microphone ($300), mic pre-amp ($1,500), and shipping costs ($600).  (*Id.*)  Even if these equipment costs are standard for the music industry, Studio Six did not provide any corresponding receipts or documents to corroborate the listed costs, the dates the equipment was purchased, or even the fair market value at the time of their purchase.  In sum, Studio Six did not "by proper affidavit produce[] admissible evidence in the form of invoices," which would have allowed the Court to calculate the damages with reasonable certainty.  *Guanghong Int'l (HK) Ltd. v. Ultimate Fin. Sols. LLC*, No. 11-CIV-4019 (RMB)(KNF), 2012 WL 1228085, \*6 (S.D.N.Y. Mar. 26, 2012), *adopted sub nom. by*

*Guanghong Int'l (H.K.) Ltd. v. Ultimate Fin. Sols. LLC*, No. 11 CIV. 4019 (RMB)(KNF), 2012 WL 2402902 (S.D.N.Y. June 26, 2012).

*Third*, Studio Six seeks reimbursement of service fees paid to third parties, such as photographers, hair stylists, and public relations agencies, without offering any supporting evidence necessary for the Court's determination of these purported "hard costs" or an explanation for those expenses' reasonableness.  For example, at the time of filing the Complaint in May 2019, Studio Six requested approximately $30,000 in "hard costs" for services rendered in the production of the song *Yete Karogh Es*.  (*See* Compl., ECF No. 1 ¶¶ 75–76.)  In the instant supplemental filings, however, Studio Six increased the $30,000 amount to a $50,000 "reasonable flat fee" without providing any basis, such as submitting evidence of the hourly rates for the producers or an affidavit explaining the reasonable market rate for production and recording of a song.  In another instance, Studio Six seeks $75 per hour for 70 hours of "administrative work" and $19,000 in reimbursement for fees paid to third parties, with no information about who performed the work, when they performed the work, and why the hourly rates or charged fees are reasonable for those services.  (Fin. Breakdown, ECF No. 57 at 2–3.)  Finally, in ten separate entries, Studio Six requests reimbursement of "Creative Fee[s]," ranging from $5,000 to $50,000.  (*Id.* at 2–4.)  Again, without any affidavit or documentary evidence, the Court cannot determine with reasonable certainty that a $7,500 creative fee per song or a $10,000 fee for "creation of successful marketing campaign, leading to #1 hit in Armenia" are proper damages to be awarded to Studio Six.  (*Id.* at 3.)  The Contract itself does not contemplate any specific fees, and nowhere else in the record does Studio Six provide any documentation—such as the underlying invoices—to support these creative fee amounts.  Even though sworn testimony is admissible evidence, *see* Fed. R. Civ. P. 55(b)(2),

none of Studio Six's witnesses provided any evidence to the Court regarding monetary damages at the show cause hearing.  (*See generally* Jan. 20, 2023 Hr'g Tr. 12:7–13:5, 27:14–41:6.)  At that same hearing, Studio Six submitted a project proposal from a public relations company but did not offer any other evidence regarding the sums expended on the public relations company's services.  (*See* Jan. 20, 2023 Hr'g Tr. 29:6–18.)

Studio Six's failure to substantiate its losses is particularly puzzling because it demanded monetary damages even before filing the Complaint in 2019.  (*See* Johnson Aff., ECF No. 1-2 at 8–9, 12–13.)  And, during the pendency of this litigation, the Court alerted Studio Six to the issue of compensatory damages (and the lack of evidence) at least twice. (Jan. 20, 2023 Hr'g Tr. 41:12–15; 44:4–13; *see also* Aug. 14, 2023 Hr'g Tr. 12:23–24 (The Court: "I have no real handle on what is it that Plaintiff actually put in and how the Plaintiff actually suffered a loss that can be reduced to money[.]")  It is therefore unclear why Studio Six still cannot justify its purported losses under the Contract to a reasonable certainty over half a decade after alleging Sargsyan's breach of the Contract.

In sum, because the record does not include a "detailed calculation, clearly setting forth the specific amounts that are sought with supporting detail" and admissible evidence, the Court finds that Studio Six fails to meet its burden of showing damages to a reasonable certainty. *Ningbo*, 2019 WL 5399973, at *6.  Accordingly, the Court respectfully recommends that Studio Six's request for $538,350 in compensatory damages should be denied.

### 2.    Post-Judgment Interest

Studio Six seeks post-judgment interest on any monetary damages award.  (Pl. Ltr., ECF No. 57 at 1.)  "[T]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers*

*Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961). Therefore, if monetary damages are awarded to Studio Six for Sargsyan's breach of contract, then the Court respectfully recommends that Studio Six should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.[6]

### 3. Attorneys' Fees

Studio Six seeks an award of $69,825 in attorneys' fees based on an hourly rate of $350 and 199.5 hours expended and provides a two-page billing summary of attorney time and costs. (Pl. Ltr., ECF No. 57 at 1; *id.* Ex. B ("Billing Summ."), ECF No. 57 at 5–6.)

"[P]arties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees." *Williamsburg Climbing Gym Co. LLC v. Ronit Realty LLC*, No. 20-CV-2073 (FB)(RML), 2023 WL 1072952, at *3 (E.D.N.Y. Jan. 9, 2023) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)), *adopted by* 2023 WL 1070615 (E.D.N.Y. Jan. 27, 2023). "Pursuant to New York law, a contractual provision awarding reasonable attorneys' fees to the prevailing party is enforceable 'if the contractual language is sufficiently clear.'" *MMP Cap., Inc. v. Punyakam, PLLC*, No. 20-CV-1755 (FB)(JMW), 2022 WL 1750434, at *8 (E.D.N.Y. Apr. 5, 2022) (quoting *LG Cap. Funding, LLC v. Wowio, Inc.*, No. 16-CV-6632 (AMD), 2018 WL 3202077, at *10 (E.D.N.Y. Apr. 24, 2018)), *adopted by* 2022 WL 1749825 (E.D.N.Y. May 31, 2022). Here, the Contract

---

[6] Studio Six does not seek pre-judgment interest. However, "[u]nder New York law, 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" *New England Ins. Co. v. Healthcare Underwriters Mut. Ins. Co.*, 352 F.3d 599, 606 (2d Cir. 2003); *see* N.Y. C.P.L.R. § 5001(a). Accordingly, if monetary damages are awarded to Studio Six, then the Court respectfully recommends that Studio Six should be granted pre-judgment interest "from the earliest ascertainable date the cause of action existed." *Id.* § 5001(b).

states, in relevant part, Sargsyan "agree[s] to and [does] hereby indemnify and save [Studio Six] harmless of and from any and all liability, loss, damage, cost or expense (including reasonable attorney's fees) arising out of or connected with any breach or alleged breach of this Agreement[.]"  (Contract, ECF No. 49-3 at 10 ¶ 9(i).)

In addition, in New York, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."  *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19-CV-2519 (PKC)(SN), 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022) (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992)), *adopted by* 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023).  Generally, when determining attorneys' fees, courts in the Second Circuit apply the "presumptively reasonable fee" standard or lodestar amount, which is the product of a reasonable hourly rate and the reasonable number of hours required by the case.  *K2M Design, Inc. v. Schmidt*, No. 22-CV-3069 (MKV)(GS), 2023 WL 10674525, at *10 (S.D.N.Y. Nov. 30, 2023) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) and *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)), *adopted by* 2024 WL 1208910 (S.D.N.Y. Mar. 21, 2024).  "A lodestar calculated under New York law must be fair based on (1) the time, labor, and skill required to handle the case given the difficulty of the issues in dispute; (2) the attorney's experience, ability, and reputation; (3) the amount of money in dispute and the benefit received from the attorney's services; (4) fee awards in similar cases; (5) the contingency or certainty of compensation; (6) the results obtained; and (7) the responsibility involved."  *Quintanilla v. Pete's Arbor Care Servs., Inc.*, No. 19-CV-6894 (JMA)(ARL), 2024 WL 3675900, at *2

(E.D.N.Y. Aug. 6, 2024) (citing *McGrath v. Toys "R" Us, Inc.*, 356 F.3d 246, 251 n.8 (2d Cir. 2004), which in turn cites *In re Estate of Freeman*, 34 N.Y.2d 1, 9 (1974)).  "'[T]he attorneys' fees must be supported by contemporaneous time records specifying the date, amount of hours, and nature of the work performed.'"  *Punyakam*, 2022 WL 1750434, at *8 (quoting *Wowio*, 2018 WL 3202077, at *10).

### a.    Reasonable Hourly Rate

"[T]he party seeking the award of fees must offer proof not only as to the customary fee charged for similar services, but also of the experience, reputation, and education of the lawyers who provided the representation." *CIT Bank, N.A. v. Ayers*, No. 15-CV-7256 (JFB)(SIL), 2017 WL 6816486, at *2–3 (E.D.N.Y. Dec. 5, 2017), *adopted by* 2018 WL 317840 (E.D.N.Y. Jan. 3, 2018).  Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff.  *Am. Home Energy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337 (ARR)(JAM), 2024 WL 2787064, at *19 (E.D.N.Y. May 30, 2024), *adopted by* 2024 WL 3086545 (E.D.N.Y. June 21, 2024).

As an initial matter, Studio Six has not submitted any information as to the "experience, reputation, and education of the lawyers who provided the representation" to justify an hourly rate of $350.  *CIT Bank*, 2017 WL 6816486, at *2–3.  Counsel's affidavits in support of Studio Six's multiple motions in this case provide no detail regarding his experience or expertise to justify the requested hourly rate.  (*See generally* Johnson Aff., ECF No. 1-2; Johnson Aff., ECF No. 9; Johnson Decl., ECF No. 32; Johnson Decl., ECF No. 37-1; Johnson Decl., ECF No. 43-4.)  Studio Six's supplement also does not confirm whether the requested rate is for Johnson only or if any other attorney or paralegal worked on this case.  (Pl. Ltr., ECF No. 57

at 1 & Billing Summ., ECF No. 57 at 5–6.)  Despite these ambiguities in the record, the Court will reasonably infer that the $350 hourly rate refers to attorney Johnson because he is the only counsel of record for Studio Six and the only attorney who appeared in court proceedings.  As such, the hourly rate of $350 is within the range of rates typically awarded to partners practicing in this district.  *Am. Home Energy*, 2024 WL 2787064, at *19.  Therefore, the Court finds that the requested hourly rate of $350 is reasonable.

### b.    Reasonable Hours Expended

"In determining the number of hours reasonably expended on a case, a district court properly excludes documented hours that are 'excessive, redundant, or otherwise unnecessary.'"  *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  "The court may also decrease the total award from the claimed amount because of 'vagueness, inconsistencies, and other deficiencies in the billing records.'" *Id.* (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)).  "[A] district court should 'examine[ ] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.'"  *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997)).  If the documentation of hours is inadequate, the district court has authority "to make across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application.'" *Id.* (quoting *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987)).  That said, Studio Six "should be eligible to recover limited fees for any contemporaneously documented time that [counsel] was physically before the district court."  *Scott v. City of New York*, 643 F.3d 56, 59 & n.1 (2d Cir.

2011).  In this regard, "entries in official court records (e.g. the docket, minute entries, and transcriptions of proceedings) may serve as reliable documentation of an attorney's compensable hours in court," even absent contemporaneous attorney time and billing records. *Id.*

Though counsel seeks attorneys' fees based on 199.5 hours expended, many of the entries in counsel's billing summary are vague or otherwise duplicative in their descriptions of tasks completed.  For example, on May 21, 2019, counsel billed two separate 8-hour blocks to "Prepare for May 23 Hearing."  (Billing Summ., ECF No. 57 at 5.)  Given that the same number of hours was billed for the same task twice in one day, this appears to be a duplicative entry.  Further, the vague description "prepare for a hearing" does not explain what underlying tasks were performed in preparation for the hearing, such as preparing direct examination questions, meeting with and preparing witnesses, and drafting oral argument points.  In fact, the summary includes 16 entries where counsel billed 8 hours or more in one day, of which ten entries were for "Prepare for [] Hearing."  (*See id.* at 5–6.)  These repetitive and vague descriptions warrant a reduction in hours expended.  *See Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64–65 (2d Cir. 2014) (affirming district court's across-the-board 50 percent reduction in light of "perceived lack of detail in the billing records").

Because Studio Six may recover limited fees for counsel's court appearances, the Court also compared the time entries related to hearing preparation to the case docket for reasonableness.  *Scott*, 643 F.3d at 59 & n.1.  In reviewing the summary, the Court finds that there may be potential overbilling.  The May 23, 2019 show cause hearing, for which counsel expended a total of 24 hours preparing, took place but was adjourned due to Sargsyan's absence.  (*See* May 23, 2019 Min. Entry.)  Even assuming that counsel needed substantial

preparation for the hearing, 24 hours is an excessive amount of time, especially given that the court proceeding itself was likely a very short one.  Similarly, Studio Six's counsel billed 16 hours in total to "prepare" for the July 23, 2019 conference, which also took place but was adjourned shortly thereafter due to Sargsyan's absence.  (July 23, 2019 Min. Entry.)  These 16 hours are particularly unreasonable because counsel likely did not need the same number of hours to prepare for the rescheduled hearing, when extensive preparation was already completed in May 2019.  Most egregiously perhaps, Studio Six's counsel billed a total of 40 hours to "prepare" for a hearing in January 2023.[7]  These vague descriptions do not justify the number of hours expended.  Therefore, the Court should exercise its discretion to assess a 40% across-the-board reduction of hours.  *Green*, 403 F. App'x at 630; *see also Matusick*, 757 F.3d at 64.

Finally, counsel's billing summary includes block billing, which is the generally disfavored "practice of lumping multiple distinct tasks into a single billing entry."  *Raja*, 43 F.4th at 87.  However, block billing is permissible in this Circuit "as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement."  *Id.*  In at least six entries, counsel groups multiple tasks into a single billing entry, making it difficult to determine the reasonableness of the hours expended on each task within the entry.  (*See, e.g.*, Billing Summ., ECF No. 57 at 6 (billing 3 hours on November 27, 2019 to "[c]onfer with client; confer with process server; prepare letter requesting adjournment); *id.* (billing 6 hours on October 23, 2020 to "[p]repare all documents at ECF Doc

---

[7] Billing summary states that the hearing preparation and attendance was from "01/16/21" to "1/20/21" (Pl. Ltr., ECF No. 57 at 6), but the relevant hearing was on January 20, 2023, when the Court received testimony and documentary evidence.  (Jan. 20, 2023 Min. Entry.)

32 Johnson Affidavit re Proof of service, Prepare new set of documents for service of process, delivery to Court Clerk, file same. Email Defendant copies of same"); *id.* (billing 16 hours on April 30, 2021 to "[p]repare Doc. 40, memorandum of law in support of motion for default and all attachments, file and deliver copies[.]").)  However, this practice is not the most problematic aspect of counsel's billing records and is not the sole basis for a 40% reduction in hours. *See Raja*, 43 F.4th at 89.

Accordingly, the Court respectfully recommends that Studio Six should be awarded **$41,895** in attorneys' fees.[8]

### 4.    Costs

Studio Six seeks $2,795 in costs, including: (1) the $400 court filing fee; (2) $595 process service fee; (3) $300 for expert witness Lubin's canceled appearance in 2019 when the motion hearing was adjourned; (4) $500 expert witness fee for Lubin's testimony in 2023; (5) $200 for DHL shipments to Sargsyan; (6) $200 for copies; and (7) $600 for airfare and hotel for an unidentified out-of-state witness from 2019.  (Pl. Ltr., ECF No. 57 at 1; Billing Summ., ECF No 57 at 5.)

"An award of costs 'normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Quintanilla*, 2024 WL 3675900, at *3 (quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020)).  "For example, fees incurred for court filing, process servers, printing, photocopying, messenger services, postage, telephone services, transcripts, transportation, meals, subpoenas, witness fees, deposition services, and transcripts are recoverable."  *Id.*  Parties must provide

---

[8] The attorneys' fees are calculated as ($350 x (199.5 hours x 0.6)) = $41,895.

"adequate" documentation to support an award of reasonable costs. *Precise Leads, Inc. v. Nat'l Brokers of Am., Inc.*, No. 18-CV-8661 (RA)(SLC), 2020 WL 736918, at *8 (S.D.N.Y. Jan. 21, 2020), *adopted in relevant part as modified by* 2020 WL 729764 (S.D.N.Y. Feb. 13, 2020); *see also Brito v. Marina's Bakery Corp.*, No. 19-CV-828 (KAM)(MMH), 2022 WL 875099, at *27 (E.D.N.Y. Mar. 24, 2022).

Here, a careful review of the entire record reflects adequate documentation only for the court filing fee and some service costs. For example, the Court permissibly takes judicial notice of the $400 court filing fee as reflected on the docket. (May 7, 2019 Docket Entry.) Further, the record includes United States Postal Service receipts for service of process, including: (1) a receipt dated December 8, 2020 showing $7.84 in postage for mailing a copy of the summons and complaint to Sargsyan (Johnson Decl. Ex. D, ECF No. 43-6 at 3); (2) a receipt dated January 25, 2021 showing $21.68 in postage for mailing two letters to Sargsyan (*Id.* Ex. F, ECF No. 43-8 at 4); and (3) a receipt dated February 22, 2021 showing $9.88 in postage for mailing the certificate of default to Sargsyan (*Id.* Ex. H, ECF No. 43-10 at 3). Therefore, Studio Six should receive $39.40 for these service costs.[9] For the remaining costs, "t][he Court declines to accept [Studio Six's] conclusory calculation of litigation costs, as it is wholly unsupported by actual receipts, dates of payments, or any other available information to assist in the Court's determination of the reasonableness of such fees." *Brito*, 2022 WL 875099, at *27.

Accordingly, the Court respectfully recommends that Studio Six should be awarded **$439.40** in costs (*i.e.* $400 filing fee + $39.40 service of process fee).

---

[9] The service fees are calculated as: ($7.84 + $21.68 + $9.88) = $39.40.

## III.    **CONCLUSION**

For the foregoing reasons, the Court respectfully recommends that Studio Six Productions, Ltd.'s supplemental submission on damages at ECF Nos. 57 and 58 (filed as a "motion for default judgment") should be **granted in part and denied in part** as follows: (1) the requested damages of $538,350 should be **denied**; (2) should the Court award compensatory damages, the order should include post-judgment interest from the date of judgment until the date of payment, at the rate set forth in 28 U.S.C. § 1961, and pre-judgment interest in accordance with N.Y. C.P.L.R. § 5001; and (3) awards of **$41,895** in attorneys' fees and **$439.40** in costs are warranted.

A copy of this Report and Recommendation is being served on Studio Six Productions, Ltd. via ECF.   Studio Six Productions, Ltd. shall serve a copy of this Report and Recommendation to Srbuhi Sargsyan via e-mail and to her known mailing addresses and shall file proof of service by **September 28, 2024**.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Kuntz.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 26, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

22